**W.R.B. CORPORATION et al., d/b/a Robertson Construction Company, et al.,**
Appellants,

v.

**Odell GEER, d/b/a Odell Geer Company, and B. H. (Bert) Camp, d/b/a B.H.C. Materials Company, Appellees.**

No. 19952.

United States Court of Appeals
Fifth Circuit.

Jan. 30, 1963.

Arthur Mitchell, Robert C. Howell, and Jake Jacobsen, Austin, Tex., for appellants.

Lee Curtis, Belton, Tex., for appellees.

Before HUTCHESON, BROWN and WISDOM, Circuit Judges.

JOHN R. BROWN, Circuit Judge.

These two cases growing out of a large government construction project were consolidated for trial, but the entry of separate judgments. In each of them, the Contractor sued the Subcontractor to recover alleged overpayments made to the Subcontractor. In each the Subcontractor filed a counterclaim against the Contractor. In the final judgment in each case the Contractor recovered nothing where as each of the Subcontractors obtained a substantial recovery for additional sums. The Contractor appeals in each case. The appeals have been consolidated. All of the contentions of the Contractor as Appellant arise out of the fact that the cases were referred to and tried and determined by a Master.

Because these claims and cross claims presented a great number of controversies growing out of specific provisions of the various contracts, subcontracts, work, service and materials furnished thereunder, the District Court without objection of any of the parties concluded that it was one properly for trial before a Master under F.R.Civ.P. 53(b). The order in each found "that this is a case in which the issues are long and complicated, and * * * is a matter of account * * *." The Master was ordered to "take evidence and ascertain the amount of damages, if any sustained by any of the parties * * *" and to "* * * report his findings and conclusions to this Court * * *." The parties shortly proceeded to extensive hearings before the Master. The hearings lasted about seven days, and the record of the testimony and other proceedings covers over 1,000

pages. In addition the original exhibits sent up with the record number approximately 120 and run another 2,000 sheets or so. Upon the completion of the evidence, the parties submitted written memorandum briefs and arguments to the Master. But before the Master had an opportunity to pass upon the issues and render his report (as the order called for), he became incapacitated by acute illness from which he never recovered. The District Court thereupon entered an order appointing a successor Master. This order provided that the successor Master was "appointed as Special Master with all of the powers granted to the * * *" original Master. It was further ordered that the successor Master "shall make a report to this Court of his findings of fact and conclusions of law based upon the evidence heretofore taken by the [original Master] and upon the record of such evidence with the power, however, to take any further evidence which [the successor Master] may deem necessary." No objection was made by any party to the appointment of a successor Master, the entry of this order or any of its terms. Specifically no objection or exception was taken to the provision that the successor Master should determine the controversy on the basis of the existing record. Although the order allowed the taking or retaking of further testimony, neither party offered any additional evidence, nor was any request made that hearings for such purpose be held.

The successor Master, after consideration of the existing record—including the memorandum briefs and arguments previously filed—took the case under advisement. Several months thereafter he rendered a separate report in each case containing detailed findings of fact and conclusions of law. To each report the Contractor (the present Appellant) filed numerous detailed exceptions. These generally attacked the specific findings because not supported by sufficient or any evidence and because such findings were clearly erroneous. These were also amplified by specific request for additional findings, conclusions of law, or both. No exception or objection was urged that the successor Master had reached his conclusions based upon the prior record. Nor was there any exception or objection that the successor Master should have heard any part, or all, of that testimony again through the personal appearances of the witnesses before him. Likewise, there was no exception or objection as to any procedural action, or nonaction, on the part of either the original or successor Master.

The District Court thereafter held a hearing on the exceptions to the Master's report. This was attended by counsel and the successor Master. The Court sustained certain exceptions urged by the Subcontractors in one of the two cases. But other than this the Court, by formal order, subsequently overruled all exceptions filed by the Contractor. It bears repeating that at no time prior to the entry by the District Court of the order confirming the reports (except as modified) of the successor Master was objection or exception ever made by the Appellant either as to (a) the case being referred to the successor Master, or (b) to his consideration and determination of the controversy on the basis of the initial existing record. Indeed, no such objections were made at any time prior to the filing of the briefs in the consolidated appeals in this Court.

■ As we are certain that this careful and experienced trial Judge would have made appropriate provision for the appearance or re-appearance of any critical witnesses for oral examination or re-examination before the successor Master had either one or both of the parties made this known to the Court or informed him of circumstances indicating that this was advisable or necessary, there is no basis for the belated charge now made before us that the District Court erred in not requiring a complete or partial rehearing of the evidence before the successor Master. We can therefore accept Smith v. Dental Products Co., 7 Cir., 1948, 168 F.2d 516, urged by the Appellant, without determining whether there is really any substantial

conflict between it and D.M.W. Contracting Co. v. Stoltz, 1946, 81 U.S.App.D.C. 334, 158 F.2d 405.

■ However, while we reject this basic contention and others related to it, we are unable at this time to affirm the judgments outright. A consideration of the record leaves us in doubt that the District Judge gave that review of the record and the successor Master's report which the law requires.

■ Under F.R.Civ.P. 53(e) (2), the trial Court, in an action tried without a jury, "shall accept the master's findings of fact unless clearly erroneous." Of course, it is precisely because the findings come with such formidable support, that a Court at some stage must determine as a judicial matter that the findings meet that test and are the product of correct principles of law.

■ But in this record and from the extended colloquy between the Judge and the Contractor's counsel on the hearing of the objections to the successor Master's report, we gain the impression that the trial Judge did not consider that he had the task here of subjecting the reports to this test. In the first place he repeatedly spoke in terms of "substantial evidence." Were this standing alone we would think that this was merely the Judge's shorthand reference to "clearly erroneous." But it does not stand alone. For in this very protracted exchange, it is apparent to us that the Judge put an interpretation on counsel's concession which counsel did not mean to imply even though each was using the same term "substantial evidence." When counsel finally stated that as to the various findings excepted to there was "substantial evidence," the Court announced, "with the admission that there is substantial evidence to support the Master's findings, I am going to let them stand. I will overrule your objections." But it is plain to us that counsel used this expression merely to acknowledge the existence and identification of testimony or exhibits offered in support of the findings. His arguments, each time, were in terms of opposing evidence which, he claimed, made the Master's finding insupportable.

■ In view of this we cannot indulge any assumption that the Judge was using "substantial evidence" as the equivalent of "clearly erroneous." To pass that test the evidence must, of course, be substantial. But unlike the Judge's function in passing on the sufficiency of the evidence in a jury case, it does not end there. As does the appellate Court in reviewing like findings of a District Court, the clearly erroneous concept of F.R.Civ.P. 52(a) requires findings to be set aside if the Court is left with the impression that the result is not the truth and right of the case. In this sense, at least, the two terms are not synonymous, and the Judge had the obligation to determine that this record and the attacked findings satisfied that meaning as well. 2B Barron & Holtzoff, Federal Practice & Procedure § 1135 (Wright ed. 1961) citing this Court's decisions in Sanders v. Leech, 5 Cir., 1946, 158 F.2d 486; United States v. Kaplan, 5 Cir., 1960, 277 F.2d 405; Manufacturer's Cas. Ins. Co. v. Instrusion-Prepakt, Inc., 5 Cir., 1959, 264 F.2d 758; Slattery Co. v. United States, 5 Cir., 1956, 231 F.2d 37; Western Cottonoil Co. v. Hodges, 5 Cir., 1955, 218 F.2d 158.

■ Of course in carrying out this vital judicial duty a Court is entitled to the assistance of counsel in pinpointing both the specific issues under attack and the relevant portions of the record demonstrating the asserted presence or absence of evidence. But essential as is a Court's dependence on counsel it cannot escape the judicial travail incident to the objections by putting the burden on counsel alone.

■ To assure that the Judge has fulfilled that judicial function, the final judgments must be vacated and the causes remanded for such determination of all the objections to the Master's reports which were raised and pending by any or all of the parties. In view of this approach, we have not undertaken to assay

the correctness of any of the findings or conclusions of law by the Master. We intimate no opinion on them.

■■ We do not undertake to blue-print the proceedings on remand before the District Court, but quite obviously the Court is entitled to call on counsel for further written memoranda, briefs, and oral argument if desired to assist the Court in the study and consideration of this substantial record. In the event of any appeals from the final orders of the Court on redetermination pursuant to this remand, the parties shall be entitled to use the present appellate record (and briefs) supplemented as necessary without the necessity of reproducing it.

Vacated and remanded.