HOUSE OF WINES, INC., Appellant,

v.

Beata J. SUMTER, et al., Appellees.

No. 85–273.

District of Columbia Court of Appeals.
Argued Feb. 19, 1986.
Decided May 30, 1986.

a jury trial followed. The jury awarded appellees $41,661.89 plus prejudgment interest of $20,000.00 and costs. On appeal appellant raises a number of contentions regarding the scope of the Auditor-Master's authority under the order of reference. We hold that the order of reference was not confined, as appellant contends, to four limited factual issues, and that appellant failed to preserve objections to admission of the Auditor-Master's findings of fact, conclusions of law and summary of evidence. Similarly, appellant failed to preserve objections to the Auditor-Master's testimony about his report.

Appellant also contends that appellees are not entitled to recover prejudgment interest under D.C. Code § 15–109 (1981) because there was a five-year delay between filing the complaint and judgment, the damages were unliquidated and the lawsuit was not for breach of contract. These contentions are without merit. The statute allows an award of interest "necessary fully to compensate the plaintiff," appellees' claim arose out of a contract, and the trial court instructed the jury to consider the pretrial delay occasioned by the Auditor-Master's delay in submitting his report to the court. Accordingly, we affirm.

Robert O. Johnston, with whom Ashley Joel Gardner, Silver Springs, Md., was on brief, for appellant.

A. Slater Clarke, with whom Mitchell I. Alkon, Bethesda Md., was on brief, for appellees.

Before NEWMAN, TERRY and ROGERS, Associate Judges.

ROGERS, Associate Judge:

Appellees sued appellant for an accounting and a money judgment for the amount due from the sale of appellees' wines. Pursuant to appellant's motion, the trial court referred four issues to the Auditor-Master. The Auditor-Master prepared a report and

## I

In 1973, appellees William Russell and Beata Sumter, along with Seymour Dubroff,[1] formed a joint venture called "Hyland Associates" to buy and sell valuable wines for profit. Both Hyland Associates, as a group, and Dubroff, individually, stored wines at Security Storage Company. In September 1974, Hyland entered into an unwritten agreement with appellant House of Wines, Inc., a liquor wholesaler, to store and resell its, and Dubroff's, wines for a "reasonable compensation," and authorized House of Wines, Inc. to receive the wines from Security Storage Company. House of Wines contends that a $50,000 lien on the wines prevented their release and that it

---

1. Not a party to this litigation.

therefore loaned that sum to Dubroff to extinguish the lien.

House of Wines retrieved the wines and prepared an inventory. Russell and Sumter sent House of Wines a letter asking it to proceed with the sale of wines on a "best efforts" basis, and to send any proceeds of a sale to Sumter. House of Wines did not sell a significant amount of the wines within a five month period but did deliver, to Dubroff, a check in the amount of $5,000 payable to Hyland Associates.

Subsequently, Sumter arranged with a liquor retailer, MacArthur Liquors, Inc., to dispose of the Hyland Associates wines for $100,000, payable in one installment of $10,000 and three installments of $30,000 each thirty days thereafter. Hyland received the first $10,000 payment, the first $30,000 payment, and an additional $17,-858.98 from Dubroff's attorney. MacArthur Liquors claimed that it paid the entire $100,000 either to House of Wines or to Hyland Associates. In November 1975, appellees demanded payment from House of Wines.

House of Wines, which had written to MacArthur Liquors in June 1975, directing that payment be made to it rather than Hyland Associates, admitted receiving $42,-932.44 in a series of nine payments from MacArthur Liquors, but claimed that it could not identify whether the payments were for Hyland Associates wines or Dubroff wines. House of Wines also claimed that it had no duty to account for proceeds of wine sales, and that it was entitled to apply the monies received toward the pre-existing $50,000 indebtedness. It admitted that it had kept no records of the sales and

delivery of these wines to MacArthur Liquors or of whose wines it was selling.

On September 28, 1977, appellees sued House of Wines for an accounting of funds generated from the sale of their wines and for a judgment for $100,000, or the amount found due, and for interest from the date of demand, and costs. House of Wines answered, demanded a jury trial,[2] and following a pretrial conference, filed a motion for reference to the Auditor-Master of the amount in dispute in order to simplify the jury's task of understanding "complicated issues concerning the amount in dispute." The trial court granted the motion and, on October 30, 1978 issued an order of reference stating:

> Upon consideration of defendant's motion for reference and a continuance it is this 30 day of October, 1978
>
> ORDERED that the following issues are hereby referred to the office of the Auditor-Master:
>
> a. the value of wines transferred to defendant;
>
> b. the amount of proceeds realized by the sale of wines through defendant;
>
> c. the amount of proceeds received by the defendant; and
>
> d. the amount of proceeds received by plaintiffs or their alleged agents or representatives
>
> and it is
>
> FURTHER ORDERED that trial of this matter set for November 2, 1978 be continued until such time as proceedings before the Master are resolved.

After reviewing the case file and meeting with counsel, the Auditor-Master heard

---

**2.** Appellees sought a money judgment on the theory that the parties had entered into an agreement which House of Wines had breached, or alternatively, that appellees' wines were transferred to House of Wines in a bailment for hire and it was negligent in fulfilling its duty to keep an accurate accounting of the wines and unlawfully converted money owed to appellees upon the sale of the wines. Accordingly, House of Wines was entitled to a jury trial on appellees' claim based on breach of contract, negligence and unlawful conversion. *See Dairy*

*Queen v. Wood,* 369 U.S. 469, 470–73, 82 S.Ct. 894, 896–97, 8 L.Ed.2d 44 (1962) (where legal and equitable claim joined, right to jury trial on legal claim must be preserved), citing *Scott v. Neely,* 140 U.S. 106, 117, 11 S.Ct. 712, 716, 35 L.Ed.2d 358 (1891), and *Beacon Theatres, Inc. v. Westover,* 359 U.S. 500, 510–11, 79 S.Ct. 948, 956–57, 3 L.Ed.2d 988 ("only under the most imperative circumstance ... can right to a jury trial of legal issues be lost through prior determination of equitable claims.").

four days of testimony, reviewed 48 exhibits offered by the parties, and submitted a tentative report to them. House of Wines filed a number of suggested changes to the report, including deletion of the master's fifth conclusion, that House of Wines owed $46,661.89 to appellees and judgment be entered in favor of appellees and against appellant for this amount, on the ground that the conclusion exceeded the scope of the order of reference. On November 30, 1982, the Auditor-Master submitted a final report to the court.[3] At trial, House of Wines objected to the Auditor-Master's report on the ground that the Auditor-Master had failed to conduct an independent audit.[4]

## II

D.C.Code § 11–1724 (1981) provides in pertinent part:

> Auditor-Master. There shall be an Auditor-Master of the Superior Court who shall (1) audit and state fiduciary accounts, (2) execute orders of reference referred by the Superior Court and perform duties in connection with the execution of such orders in accordance with Rule 53 of the Federal Rules of Civil Procedure or other applicable rule, and (3) perform such other functions as may be assigned by the Superior Court.

■ Under Super.Ct.Civ.R. 53(b),[5] reference to a master is limited in jury trials to exceptional cases in which the issues are complicated and involve matters of account and difficult computation of damages. The master's authority in a particular case is defined by the order of the trial court referring specific matters to the master.

Rule 53(c) provides in pertinent part that when reference to a master is made,

> [t]he order of reference to the master may specify or limit his powers and may direct him to report only upon particular issues or to do or perform particular acts or to receive and report evidence only.... Subject to the specifications and limitations stated in the order, the master has and shall exercise the power to regulate all proceedings in every hearing before him and to do all acts and take all measures necessary or proper for the efficient performance of his duties under the order.

### A.

■ Appellant contends that the trial court erred in allowing the Auditor-Master to testify and in admitting his report into evidence because the Auditor-Master exceeded his authority under the order of reference. Appellant reads the order to limit the Auditor-Master's power to the narrow function of reporting four limited facts. However, contrary to appellant's reading, the language of the order is broad, stating "the following issues are hereby referred to the Office of the Auditor-Master." The court did not order the Auditor-Master to perform or not perform any particular function with regard to these four issues. Accordingly, under Rule 53(c), it was appropriate for the Auditor-Master to hold hearings, review exhibits, find facts relevant to the four issues referred to him, and to draw conclusions of law where necessary for his factual determination.[6]

---

3. The final report was filed four years after the order of reference was issued.

4. House of Wines filed post-trial motions for a new trial on the grounds that the factual findings and legal conclusions of the Auditor-Master were improperly admitted into evidence, and that the award of prejudgment interest was excessive and improper, and for a judgment notwithstanding the verdict on the grounds that the verdict was against the weight of the evidence and the issue of prejudgment interest improperly submitted to the jury. The motions were denied.

5. Super.Ct.Civ.R. 53, regarding "masters," is identical to Fed.R.Civ.P. 53 except for the local rule's establishment of the office of the Auditor-Master.

6. We distinguish between conclusions of law to carry out the order of reference and conclusions of law in the report. *See Wright, Inc. v. F.D. Rich Co.*, 354 F.2d 710, 714 (1st Cir.1966) (while it is appropriate for a master to include conclusions of law in his report in some circumstances, it would not be appropriate for the trial judge to allow such conclusions of law to be presented to the jury as testimonial or documen-

The question, then, is whether the master's findings were confined to the scope of the court's order. Appellant contends five findings of fact exceeded the scope of the order.[7] However, appellee responds that appellant is raising these objections for the first time on appeal. The record indicates that appellant objected to the draft report in suggestions submitted to the master, and objected generally at trial, prior to admission of the Auditor-Master's report, to the master's testimony about the report and also objected specifically because of the absence of an independent audit.[8] This court will not consider, in the absence of circumstances amounting to manifest injustice, issues which are raised for the first time on appeal. *Gillespie v. Washington*, 395 A.2d 18, 21 (D.C.1978); *Miller v. Aviron*, 127 U.S.App.D.C. 367, 370–71, 384 F.2d 319, 321–22 (1967). We find no manifest injustice; during the six day trial appellant introduced evidence to dispute the Auditor-Master's findings and conclusions, and so argued to the jury in closing argument. Accordingly, we consider only whether appellant's general objection to the master's testimony and specific objection to the absence of an independent audit are a sufficient basis on which this court can hold that the trial court erred.

The Auditor-Master's task was to determine the amount of the proceeds realized by the sale of the wines, and the respective amounts received by the parties. To do so, he reviewed the parties' records and heard testimony from the parties and a certified public accountant. Because the records and testimony revealed appellant that had not kept proper records or accounts to enable identification of the wines belonging to Hyland Associates as distinct from those in Dubroff's personal collection, and had commingled Dubroff's personal wines with the Hyland wine collection, the Auditor-Master concluded that appellant had received all of the proceeds from the sale of wines less only what appellees agreed they had received. Therefore, the findings were an integral part of the master's fact-finding process and within the scope of the order of reference.

Moreover, since the purpose of the Auditor-Master's report is to advise the court and jury on complicated factual issues presented by a particular case and to simplify the task of understanding the evidence, *see D.M.W. Contracting Co. v. Stolz*, 81 U.S.App.D.C. 334, 336, 158 F.2d 405, 407 (1946), *cert. denied*, 330 U.S. 839, 67 S.Ct. 980, 91 L.Ed. 1286 (1947); *Shima v. Brown*, 77 U.S.App.D.C. 115, 133 F.2d 48 (1943), *cert. denied*, 318 U.S. 787, 63 S.Ct. 982, 87 L.Ed. 1154, the requirement that the report conform to the confines of the order of reference should be read in a flexible manner to further this goal. Nota-

---

tary evidence); Super.Ct.Civ.R. 53(c). *See also Winsor v. Continental Fabricators & Supplies, Inc.*, 641 S.W.2d 120, 124 (Mo.App.1982) (questions of fact and law may merge; for example, when a party claims a finding of fact is not supported by a legally sufficient quantum of evidence).

7. The five factual findings objected to were:
   (1) that Defendant commingled wine belonging to Plaintiffs with Dr. Dubroff's personal collection
   (2) that [defendant's president] "admitted" that he "kept no records pertaining to sales and deliveries of wines to MacArthur Liquors"
   (3) that Defendant did not account to the Plaintiffs for their wines or for monies received for sale of same
   (4) that Plaintiffs' accountant had detected "discrepancies" in the Defendant's accounting

of wines, and that Defendant owed $31,983.33 to Plaintiffs; and
   (5) that Defendant is a corporation that has been engaged in the liquor wholesale distribution business for quite a period of time, employing some 41 people and has computer type equipment available to it for maintaining records; yet it has failed to properly keep records pertaining to the wines of Plaintiff and its accounts filed with the Court contained numerous discrepancies. The burden of accounting is a burden to be borne by Defendant which it fails to meet.

8. Appellant conceded at oral argument that the only objection preserved on the record at trial was the objection based on the lack of an independent audit, although asserting that appellant had raised a number of objections at trial during informal discussions with the judge and appellees' counsel.

bly, the case relied upon by appellant, *Cohn v. Cinman*, 85 Ill.App.2d 285, 230 N.E.2d 23 (1967), supports this view. In *Cohn*, the court concluded that although both parties had presented evidence exceeding the scope of the order of reference, because the accuracy of the evidence was not questioned, "[t]he evidence as reported by the master shall stand as evidence on the merits of the case." 230 N.E.2d at 25.

### B.

Appellant also contends that the trial court improperly permitted to be introduced into evidence at trial the Auditor-Master's summary of the testimony, findings of fact, and conclusions of law.[9]

Super.Ct.Civ.R. 53(e)(3) governs the admissibility of an Auditor-Master's report in jury trials, providing:

> In an action to be tried by a jury the master shall not be directed to report the evidence. His findings upon the issues submitted to him are admissible as evidence of the matters found and may be read to the jury, subject to the ruling of the Court upon any objections in point of law which may be made to the report.

Since the factual findings in the instant case were upon the issues submitted to the master, they were admissible and constituted *prima facie* proof of the matters found.[10] The trial court instructed the jury to regard the report as evidence which was entitled to such weight as the jury would accord it, and did not at any time instruct the jury to regard the report as dispositive. Therefore, the introduction of the factual findings as documentary and testimonial evidence was not error. *D.M.W. Contracting, supra,* 81 U.S.App. D.C. at 336, 158 F.2d at 407; *Shima v. Brown, supra,* 77 U.S.App.D.C. at 116, 133 F.2d at 49; *Wright, Inc. v. Rich Co., supra,* 354 F.2d at 714; *Eastern Fireproofing Co. v. United States Gypsum Co., supra,* 50 F.R.D. at 143.

### C.

Appellant further argues that two statements in the Auditor-Master's report are legal conclusions[11] and should not have been introduced as evidence at trial. Specifically, he refers to the master's finding 21 that appellant failed "to properly keep records," and to the master's conclusion

---

**9.** At the beginning of Auditor-Master's testimony appellant objected to the testimony, and requested to voir dire the master on his report. The court responded that the master was entitled to read the report to the jury and that the report could be introduced in evidence. The court rejected appellant's objection to the absence of an independent audit, ruling it affected only the weight of the testimony, but allowed the voir dire. At the conclusion of the voir dire examination, appellant renewed the objection to the report on the ground that the Auditor-Master had not performed an independent audit. The court overruled the objection.

Appellant contends that at the conclusion of the master's testimony on November 21, 1984, appellees sought to introduce the report into evidence and appellant objected. Appellees concede that appellant objected to the admission of the report but maintain appellant failed to provide a basis for the objection. It is impossible to determine from the record on appeal the basis of appellant's objection at this time or at the close of appellees' case, or the reasons for the court's rejection, because appellant did not order the relevant part of the November 21 transcript. Appellant has the responsibility to perfect the record on appeal. *Cobb v. Standard Drug, Inc.,* 453 A.2d 110 (D.C.1982); D.C.App.R. 10(c)(1).

**10.** Super.Ct.Civ.R. 53(e)(2) provides that in nonjury actions, the court must accept the master's finding of fact unless clearly erroneous. One court has suggested that in jury trials, in the absence of other sufficient evidence, since the master's report is treated as *prima facie* proof, "it is reasonable to demand of it the same sufficiency of evidence that would warrant a jury determination of the same facts," *i.e.,* such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Eastern Fireproofing Co. v. United States Gypsum Co.,* 50 F.R.D. 140, 143 (D.C.Mass.1970). The findings in the instant case were sufficient to go to the jury.

**11.** Although the master's statement that "the burden of accounting is a burden to be borne by the Defendant," could be classified as a conclusion of law, appellant has never challenged this statement. It is a correct statement of law, and was included in the court's instructions to the jury.

that "there is due and owing to Plaintiffs by the Defendant, in the sum of $46,661.89" and "judgment be entered in favor of the Plaintiffs and against Defendant for this amount." Appellant contends that these statements amount to a legal conclusion on the ultimate issue of the case.

■ "Certain questions are clearly not for the ultimate determination of either a master or a jury, *e.g.* the formulation and application of legal principles ..." *Eastern Fireproofing, supra,* 50 F.R.D. at 143. Thus, "[i]t [is] not good practice for the master to state conclusions of law when his report was not to be considered final and [is] to be read to the jury." *Wright, Inc. v. Rich Co., supra,* 354 F.2d at 714.[12] If the master decides a question of law in order to perform his primary duty of finding facts, however, and his conclusion is a correct statement of law, the findings will not be disturbed on appeal. *Eastern Fireproofing, supra,* 50 F.R.D. at 143; *Lunn & Sweet Co. v. Wolfman,* 268 Mass. 345, 167 N.E. 641, 645 (1929). The statement regarding appellant's recordkeeping can be justified on this basis.

■ The master's conclusion and recommendation on liability is more troubling. However, it is unclear from the record whether appellant objected at trial to the admission of the master's conclusions.[13] In addition, the court's instructions directed the jury to treat the report as evidence to be weighed against other, countering evidence. Furthermore, we are satisfied that the jury's verdict in favor of appellees in an amount $5,000 less than that recommended by the Auditor-Master reveals any error was harmless.[14]

### D.

■ Appellant further contends that it was error to allow the Auditor-Master's summary of testimony into evidence. We agree. Rule 53(e)(3) provides that in a jury trial, "the master shall not be directed to report the evidence." Since the master's findings constitute *prima facie* proof only and may be contradicted by evidence at trial, the testimony taken by him should not be introduced as evidence at trial. *Phillips Petroleum Co. v. Williams,* 159 F.2d 1011, 1013 (5th Cir.1947). The parties do not dispute this principle. We are satisfied that any error was harmless.

The jury heard six days of testimony, and the evidence at trial did not significantly contradict the testimony before the Auditor-Master and, in fact, was duplicative of key testimony. That the jury independently evaluated the evidence is demonstrated by its verdict which rejected one of the Auditor-Master's conclusions. Finally, the Master's summary of evidence contained information favorable to both parties. Accordingly, we hold that appellant's substantial rights were not affected by introduction of this evidence. *Pyne v. Jamaica Nutrition Holdings, Ltd.,* 497 A.2d 118, 126 (D.C.1985); *National Rifle Association v. Ailes,* 428 A.2d 816, 818 n. 1 (D.C. 1981); Super.Ct.Civ.R. 61.

### III

Finally appellant contends that the trial court erred in allowing the jury to award prejudgment interest to appellees under D.C. Code § 15–109 (1981).[15] Appellant ar-

---

**12.** In *Wright, Inc. v. Rich Co., supra,* the court stated:

"The only purpose in providing that the report shall not be final is to present findings to a jury which may be supplemented or contradicted by further evidence at the trial so that the jury can decide the case on the entire factual picture with the rulings of law to be made by the court."

*Id.*

**13.** *See supra* note 9.

**14.** The difference may be attributable to the jury's rejection of the master's finding that in 1975 Dubroff received $5,000 from appellant and used it personally.

**15.** D.C.Code § 15–109 (1981) provides:

In an action to recover damages for breach of contract the judgment shall allow interest on the amount for which it is rendered from the date of the judgment only. This section does not preclude the jury, or the court, if the trial be by the court, from including interest

gues that "the inordinate five year delay between the inception of this litigation and judgment, the unliquidated character of the amount claimed in the action" and the fact that "there was no contract on which to found such an award" militate against an award of prejudgment interest.

Although the prejudgment interest statute expresses the general rule that damages for an unliquidated claim run only from the date of judgment, it also contains an exception where an award of interest is "necessary to fully compensate the plaintiff." Appellant incorrectly asserts that prejudgment interest may only be awarded in cases where a clear contractual relationship exists. *See Edmund J. Flynn Co. v. LaVay*, 431 A.2d 543, 550 n. 6 (D.C.1981) (interest permitted where court concluded no sales commission contract created and recovery allowed on basis of implied and express agency agreement). Furthermore, the claim need not be liquidated under D.C. Code 15–109. The trial court has broad discretion in awarding prejudgment interest. *Edmund J. Flynn Co. v. LaVay, supra*, 431 A.2d at 550 n. 6; *Giant Food, Inc. v. Jack I. Bender & Sons*, 399 A.2d 1293, 1301 (D.C.1979). We find no abuse of that discretion.

The court instructed the jury to consider the five year delay between the commencement of litigation and judgment, and the uncertainty of the amount of damages as weighing against an award of interest. Appellees' suit for an accounting and money judgment, although not framed as a breach of contract action, was based on a contractual relationship between the parties. Appellees' evidence described how appellee Russell had to borrow money when proceeds from the sale of Hyland Associates' wines were not turned over by appellant, and established that, based on an average rate of interest of ten percent since November 1, 1975, appellees would have received in excess of $41,000 in inter-

est on the amount withheld. *Giant Food v. Bender, supra*, 399 A.2d at 1302 (citing *Ralston Purina Co. v. Parsons Feed & Farm Supply, Inc.*, 416 F.2d 207, 212 (8th Cir.1969) (judgment interest is "generally reviewed 'as compensation allowed by law for the use or forbearance of money or as damages for its improper retention.' ")). The jury awarded less than half of what appellees sought in interest. We therefore find no error in allowing the jury to award prejudgment interest.

*Affirmed.*

---

as an element in the damages awarded, if necessary to fully compensate the plaintiff. In an action to recover damages for a wrong

the judgment for the plaintiff shall bear interest.